CHARLES H. OSBORNE, BUILDING INSPECTOR OF BALTIMORE CITY,

*vs.*

HARRY GRAUEL.

*Municipal Corporations—Issuance of Building Permit—Police Powers—Discretion of Mayor—Mandamus.*

The Building Inspector of Baltimore City is not justified in refusing to issue a building permit, after its approval by the Mayor, by the fact that the place in such permit intended to be filled in with the name of the owner was actually filled in with the name of the builder, if the paper bore the signatures of both owner and builder. p. 89

Since the Mayor, in declining to approve an application for a building permit, is discharging one of his official functions and not acting in a personal capacity, he should be made a co-defendant with the Inspector of Buildings, in a proceeding for a mandamus to compel the issuance of the permit. p. 90

A building permit from the city is not completely issued until there has been a delivery as well as a manual signing. p. 91

The police power is not an inflexible restriction, but it may and must vary from time to time according to the exigencies of the population of a given State or locality, and ordinances for the regulation of building in a large city have been generally recognized as falling directly under the police power. p. 92

That hearings were held in connection with an application for a permit for the erection of a public garage, with opportunity given both to the applicant and the objectors to be heard, and a personal examination of the site was made by the Mayor, *held* to show that the refusal of the permit was not arbitrary or inspired by a disposition to use unrestrained power, but was a legitimate conclusion as to what would best promote the city's welfare, and mandamus should not be granted to compel its issuance. pp. 92-94

*Decided February 5th, 1920.*

Appeal from the Superior Court of Baltimore City (BOND, J.).

The cause was argued before BOYD, C. J., BRISCOE, BURKE, URNER and STOCKBRIDGE, JJ.

*Roland R. Marchant,* City Solicitor, and *Edward F. John-son,* Assistant City Solicitor, for the appellant.

*Daniel C. Joseph* and *J. Le Roy Hopkins,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court:

The record in the above entitled case presents as the foundation of the action an application for a building permit. The permit, under the ordinances of the Mayor and City Council of Baltimore, required the approval of the Mayor, and a paper is presented evidencing the permit, bearing date May 14th, 1919, and which reads as follows:

"Permission is hereby granted to Jos. S. Small to erect Public Garage, W. S. Prospect Av., 100 ft. S. of Oakdale Av."

This was approved by James H. Preston as Mayor of the City, and by him handed to the appellant. Across the face of this permit was written the word "Disapproved."

According to the evidence adduced in support of the application for a mandamus, this entry of disapproval was made after Mr. Preston ceased to be Mayor, and Mr. Broening had succeeded him in that office.

The appellant gives, as the reason for the disapproval and refusal to deliver the permit, a discrepancy in the place intended to be filled in with the name of the owner, and which was actually filled in in the name of the builder; but inasmuch as this paper bore the signature both of Mr. Grauel, the owner of the property, and Mr. Small, the contractor, that can hardly constitute an adequate reason for the failure to deliver the permit.

There further appears what is called an application for a new building, and which application is for the erection of nineteen buildings, to be used in its entirety as a public garage. This bears no mark of approval, nor any signature except that of C. H. Osborne, the Inspector of Buildings. Here is a discrepancy between the application for the permit and the permission granted of a far more serious nature than the transposition of the two names.

The lot upon which this public garage was to be erected was 190 feet 8 inches by 25 feet, and according to the testimony, the purpose was not to erect it immediately upon Prospect Avenue, but upon the rear portion of a lot fronting on Prospect Avenue, and which portion so to be improved, it is testified, was accessible by means of an alley, the other improvements upon which were of not an especially desirable type in a resident section, as, for example, paint shops and plumbing shops.

The evidence is to the effect that Mr. Broening as Mayor declined to approve this application, in which act he was discharging one of his official functions as the head of the municipal corporation, and not acting in any personal capacity. He should, therefore, as Mayor, have been made a co-defendant with Mr. Osborne, whereas the application for the mandamus was against Mr. Osborne alone, as the Inspector of Buildings.

The lot upon which it is proposed to erect this garage adjoined the then suburban development known as Roland Park, and by the Annexation Act now within the corporate limits. The reason assigned by Mayor Broening for his refusal to sanction the permit was, that "he didn't think garages ought to be built in that community; that it was a very nice class of property out there and that these garages would depreciate the value of the property * * * and that the character of the proposed buildings did not conform to the other improvements in the neighborhood."

The appellee, in his argument and in his brief, speaks of the permit as issued, but not delivered; but this is a distinction which cannot be validly drawn. The mere manual signing by the Mayor of a municipal corporation is not an issuance of the paper so signed, but to constitute a completed issuance there must be delivery, as well as the manual signing.

The theory of the appellee is that the refusal of Mayor Broening to sign and issue the desired permit was based solely on esthetic reasons, and that such reasons could not constitute a valid ground for his action. On the other hand, the theory of the city is that by his action, or inaction, the Mayor was exercising a police power, or acting under the Welfare Clause of the City Charter, and that this called for the exercise of a discretion, and that the Court would not override the action of the chief executive of the city, where he had been invested with such discretionary power.

For good reasons courts have been extremely loath to attempt any precise definition of what constitutes the police power, and whatever the police power of the State may be, so far as Baltimore City is concerned, that power has been granted to the municipal corporation. This subject was fully discussed by Judge Pearce in *Rossberg* v. *State,* 111 Md. 394, and upon this point he says: "Broader or more comprehensive police powers could not be conferred under any general grant of police power, for the purposes mentioned in Section 18, than those granted in that section, and when we consider the "Welfare Clause" of the charter, Section 31, greater emphasis could not be laid upon the implied powers of the city for the maintenance of the peace, good government, health and welfare of the city, than is there laid."

The foregoing language was cited with approval by CHIEF JUSTICE BOYD in the case of *Brown* v. *Stubbs,* 128 Md. 129, and is now to be regarded as settling the extent of the power which can be validly exercised by the Mayor and City Council of Baltimore.

Moreover, it has been held in a number of cases that the
police power is not an inflexible restriction, but that it may
and must vary from time to time according to the exigencies
of the population of a given state or locality, and ordinances
for the regulation of building in a large city have been gen-
erally recognized as falling directly under the police power.

So, in *Easton* v. *Covey,* 74 Md. 262, the commissioners of
Easton had passed a general building ordinance which was
sustained by this Court. In the case of *Cochran* v. *Preston,*
108 Md. 220, this Court, speaking through JUDGE WOR-
THINGTON, said: "Among the police powers of the State the
right to regulate the height of buildings in a city cannot be
questioned." And quoting from the case of *Garrett* v. *Janes,*
65 Md. 260, "In a city noted for its monuments, municipal
legislation peculiar to their neighborhood would seem indis-
pensible."

In the case of *Stubbs* v. *Scott,* 127 Md 86, where the ap-
plication was made for the erection of four stores on St.
Paul Street, this Court recognized and applied the rule that
where it is merely a question of improving the esthetic ap-
pearance of a neighborhood, a prohibition of building can-
not be maintained under the guise of the police power.

The case of *Bostock* v. *Sams,* 95 Md. 407, was largely re-
lied upon by the appellee. That case, however, had for its
turning point the power and duty of the Appeal Tax Court,
by which at that time building permits were issued or re-
fused to applicants, and no appeal whatever was given from
the action of the Appeal Tax Court.

That decision relied largely upon *Radecke's* case, 49 Md.
217, holding that the power then lodged in the Appeal Tax
Court was or might be used in an arbitrary, unrestrained
manner. In deciding the Bostock case JUDGE JONES was
careful to point out the distinction between that case and the
case of *Easton* v. *Covey, supra,* and dwelt especially upon
the fact that the ordinance then under consideration did not

permit the Appeal Tax Court to go into an inquiry when an application was made to it for the issuance of a permit.

This at once distinguishes the present case from the case of *Bostock* v. *Sams,* for in this case the ordinance under which the action was taken provides for notice by advertisement of the application, and an opportunity to present objections, both of which were done in this case.

If we turn to courts outside of Maryland the case that most nearly approaches the present case in its facts is the case of *Storer* v. *Downey,* 215 Mass. 273, the opinion in which was delivered by CHIEF JUSTICE RUGG. As here it was sought by means of mandamus to compel the granting of a permit for the erection of a garage. In deciding that case the Court said: "An ordinance of the City of Cambridge provides that no building shall be erected for or converted to use as a garage unless such use is previously authorized by the Board of Aldermen. This is a valid exercise of the police power. The disagreeable incidents of a garage are well known. They have been adverted to frequently in recent decisions of this Court. Oil and gasoline almost inevitably stored and used in them are so highly inflammable and explosive that they may increase the danger of fire, no matter how carefully the building be constructed nor how non-combustible its materials. Although lawful and necessary buildings, they are of such a character that regulation of the place of their erection and use is well within settled principles as to the police power." In this case the Board of Aldermen passed an order granting the authority, but the Mayor vetoed it, "because he thought some policy respecting garages in residential sections should be adopted by the city and because he was opposed to their establishment in residential districts contrary to the sentiment of abutting property owners." The contention in the case was that the veto for such a reason was a nullity. "The objections urged by the Mayor in the present case are not whimsical or absurd, but obviously grounded

upon what seems to him a wise municipal policy.    The order of the Board of Aldermen was accordingly held nugatory."

The same principle was applied and reaffirmed in the later case of *Kilgour* v. *Gratto,* 224 Mass. 78, where the application was for a permit for the erection of a factory.

The same doctrine, less clearly stated, is to be found in *People  ex rel. Keller* v. *Oak Park,* 266 Ill. 365.

The testimony in this case shows that hearings were held, with an opportunity given the person applying for the permit, and those objecting to its granting, to be heard; the personal examination of the site by the Mayor of the city. These all tend to show that the refusal of the permit was not an arbitrary act, nor one inspired by any disposition to use an unrestrained power, as in the Radecke case, but was the legitimate conclusion reached as to that which would best promote the welfare of the city, and the petition should have been dismissed.

*Order reversed and cause dismissed with costs*
*to be paid by the appellee.*