# CIRCUIT COURT OF BALTIMORE CITY.

Filed April 27, 1925.

MARY H. SMITH, ET AL.,
VS.
STANDARD OIL CO., ET AL.

*Marbury, Gosnell & Williams* and *Fendall Marbury* for plaintiffs.

*Johnson & Adams* and *Philip B. Perlman* for defendants.

SOLTER, J.—

The complainants are the abutting owner and certain neighborhood owners of the property at the southeast corner of Cathedral and Eager streets, who have jointly filed this bill for the purpose of enjoining the defendants from establishing, or permitting to be established, a filling station for gasoline and oils upon said property. A demurrer to the bill has been filed, and this ruling is upon the demurrer. The three main grounds upon which the application for injunction is based are as follows:

First: That the Mayor did not properly or legally exercise the discretion vested in him in approving the permit for the station;

Second: That the ordinance under which the permit was issued is unconstitutional and invalid because of certain misdescription in its title;

Third: That under the allegations of the bill of complaint, the filling station must be found by the Court to be a nuisance.

## FIRST.

### Discretion of the Mayor.

The complaint that the Mayor did not validly exercise the discretion vested by the Charter and the ordinances conferring the power upon him rests upon three grounds: (a) That under the allegations of the bill "it is apparent that the Mayor did not exercise the discretion vested in him on behalf and solely on behalf of the health, safety, morals and welfare of the public"; (b) That the Mayor exercised this power so as to interfere with the judgment of the Police Commissioner of Baltimore City, and in conflict with his powers under the City Charter; (c) That the Mayor granted the permit solely through a mistake of law upon his part, in that he believed he was compelled under the zoning ordinance of the City to grant the permit.

This Court finds but one of these propositions to be tenable. With regard to the exercise of the discretion vested in the Mayor, the general rule applicable to this allegation of the particular bill, is that an officer to whom public duties are confided is not subject to the control of the Courts in the exercise of the judgment which the law reposes in him as part of his official functions, unless such judgment or/and discretion is abused and exercised in an arbitrary and capricious manner. 23 A. & E. 372; McQuillan on Municipal Corporations, Sec. 376; Osborne vs. Grauel, 136 Md. 88. Therefore, the general charge, without more specific details than those stated in the bill, that the Mayor did not exercise the power in behalf of the health, safety, morals and welfare of the City does not give this Court the power to set aside his action.

With reference to the allegations of the bill charging substantially that the Commissioner of Police had considered that any additional filling stations on Cathedral street would seriously interfere with automobile traffic upon the street, and that the opinion and judgment of the Police Commissioner relating to a matter of safety is made

384

paramount under the charter to that of the municipal government, it might well be argued that the proper person to ask that the power of the Mayor be thus limited should be the Commissioner, and that whether this particular act of the Mayor has infringed the power of the Commissioner should be left primarily to the Commissioner to determine and not a third person acting in his behalf. If no such action is taken by the Police Commissioner, it may be safely assumed that the Commissioner acquiesces in the action of the Mayor, thus making the latter's act his act.

Regarding the allegation that the Mayor acted upon a mistake of law and thereby precluded himself from exercising the discretion reposed in him by the City Charter, the allegations of the bill must be for the purpose of the demurrer regarded as true. These allegations are "at all these hearings every opportunity was afforded the Mayor to offer some justification from the point of view of the public health, safety, morals and welfare for the granting of this permit, but no such justification was ever even suggested by him, on the contrary upon finally granting and approving the permit he took the ground as publicly stated by him, that because of the fact that the neighborhood in question had been zoned for commercial purposes by the City Zoning Ordinance, he was bound by this Ordinance and *was obliged thereby to approve the permit.*"

It is further alleged in the bill that this was a misconception by the Mayor of the law governing the case. The manifest implication from these charges is that by reason of the Zoning Ordinance he regarded his power abrogated and the granting or refusing a permit an empty formality; that no matter how many applications were made in a commercial zone, even to the extent of a filling station for each property in such zone, the permit would follow as a matter of course, and the Mayor would be powerless to prevent the erection of such stations. While it is incredible that the Mayor did commit such an error, the Court is powerless to decide these questions of fact against the sworn allegation of the complainants. Therefore, as the averment is that the mayor stated that he was powerless to exercise the dis-

cretion vested in him and thereby precluded himself for considering the application upon its merits with reference to the protection of the public welfare, the demurrer will be overruled. This, however, is the only reason for overruling the demurrer for the reasons stated in this opinion.

SECOND.

*The Invalidity of the Ordinance.*

The Ordinance is alleged to be invalid because the title is misleading. This Ordinance is No. 611½, which is set forth in full in the bill of complaint. In its title, after reciting the ordinances it repeals and reordains with amendments, it reads:

Title, "Police Regulations and Prevention of Fires;" sub-title, "Inflammable and Explosive Materials," *by authorizing an increase in the size of storage tanks for gasoline.*

By the ordinance the Building Inspector is authorized to grant a permit, subject to the approval thereof by the Board of Estimates, in which naphtha or gasoline may be stored by the methods subsequently therein set forth. The ordinance, after prescribing the character of the storage tank, then provides, "and more than one tank may be permitted upon the same premises."

The former ordinance provided for a maximum storage capacity of two hundred and seventy-five (275) gallons, and specified that not more than one tank shall be permitted upon the same premises. So that, while from the title of the ordinance there is no limit placed upon the quantity of gasoline, and conceivably it would have been proper legislation to have fixed the maximum quantity at two thousand gallons or more, it is charged that it was improper to provide for a separation of the quantity into different storage tanks, under the particular phraseology of the title; that although under the title an unlimited quantity could be ordained, it was improper to divide the quantity allowed into separate tanks. It is conceded that by the title notice is served upon the Council and the community that they must beware of the extent of the increase allowed or to be provided by the ordinance. If such is the case, how then is it conceivable that a mere separation or division of the quantity allowed would

be deceptive? While there are practically countless decisions upon the validity of legislation, concerning which the title was alleged to be insufficient or misleading, the general principle controlling the question is set forth in the case relating to the Market Ordinance which was under review by the Court of Appeals in M. & C. C. vs. Wollman, 123 Md. 310. The principle therein announced is as follows:

"It is well settled by the numerous cases dealing with the subject, that it is only the subject matter of the Act that need be described in the title and the title need not indicate or disclose the details of the agency or means by which the subject of the Act is to be carried into effect. Bond vs. Baltimore, 116 Md. 689; Levin vs. Hewes, 118 Md. 626; Worcester County vs. School Comrs., 113 Md. 307; Gould vs. Baltimore, 120 Md. 534."

Applying this principle to the title of this ordinance in question, it would certainly seem to follow as an almost indispensable detail of increasing the quantity of gasoline to be permitted upon a certain premise, that some provision should be made for the size and number of the receptacles for containing the same, and if it would have to be conceded under the ordinance that a definite quantity could be fixed for any one container, it inevitably follows additional containers or tanks would have to be prescribed.

The second point alleged against the ordinance is that, as amended, certain powers with reference to permits are given the Board of Estimates not included in the prior ordinance. This certainly has much more merit than the objection relating to the quantity of gasoline. Under the prior ordinance the power is vested in the Mayor as to locations of this class of enterprises and a further power is vested in the Building Inspector to see that the construction of the station conforms to the ordinances controlling the same. The new ordinance adds the action of another governmental agency in the city's permissive use of property for this purpose to those present in the prior ordinance. Should t h e present ordinance be held invalid for this reason, only this particular part of the ordinance would fall and the rest of the ordinance would be upheld.

This being the case, it does not appear that the complainants have been injured by this part of the ordinance. To strike down this feature of the ordinance in this suit would, therefore, in this particular case be a futile and unnecessary act.

## THIRD.

### The Nuisance Question.

It has been decided that municipality cannot under a general police power declare a certain business to be a nuisance, unless it has been adjudicated such by the courts. If it is not a nuisance per se the mere declaration by a city council does not make it so. Though it is the province of the legislature and of municipalities under grant to determine what laws are necessary to secure the public health, yet they cannot, under the guise of police regulations arbitrarily infringe upon property rights, and their determination of what is a proper exercise of this power is not final, but subject to the scrutiny of the courts.

See 25 L. R. A. (N. S.) 247.

The question arises as to whether the converse of this proposition is true. Assuming that a business is per se a nuisance, can the city authorities establish its being carried on to the injury of other property, or the discomfort of neighboring residents?

It has been held by many authorities that a filling station is not a nuisance per se. Berry on Automobiles, 4 Ed. 1369; Julian vs. Oil Co., 112 Kan. 671; Brown vs. Easterday, 194 N. W. 798.

In the case of Hendrickson vs. Standard Oil Co., 127 Md. 577, the case went to the Court of Appeals upon a demurrer to the bill, and each of its paragraphs, the lower Court having sustained a demurrer to only part of the bill. The Court, in its opinion, says, in setting forth the facts of the appeal:

"The seventh paragraph avers that the defendant has recently purchased land adjacent to that of the plaintiff, and the latter is informed and believes that the defendant intends to construct in immediate proximity to the plaintiff's house a tank, in which will be stored vast quantities of highly inflammable and explosive oils, whereby, if permitted, the value of the plaintiff's property, will be entirely destroyed."

In considering this legal question raised by these averments, the Court said:

"The views we have expressed enable us to deal very briefly with the allegations of the seventh paragraph of the bill, which relate to the prospective installation of a very large tank, for the storage of inflammable and explosive oils in immediate proximity to the plaintiff's houses. This would undoubtedly be a nuisance against which the plaintiff would have a clear right to preventive relief."

The allegations of this particular bill in the instant case are substantially the same charges as made in the Hendrickson case, and if these serious averments constituted the only facts set forth in the bill, it would become the duty of this Court to unhesitatingly follow that case upon the principle of law set forth. The bill, however, states that the filling station is to be erected and the tanks installed in accordance with the provisions of the ordinance, so that the broad allegations of the nuisance paragraph must be restricted by the terms of the ordinance necessarily thus connected therewith. The question, therefore, for decision is not the mere storage of gasoline, but the storage and handling of inflammable oils and explosive oils under the safeguards provided by the ordinance. The objectionable feature of the station is the storage of the large quantity of gasoline. The ordinance provides that this shall be stored "in an iron or steel tank of design and construction approved by the Inspector of Buildings, said tank to be buried underground at least two feet beneath the surface and the maximum amount stored therein shall not exceed one thousand gallons, and more than one tank may be permitted upon the premises."

There can be no doubt that there must always be a certain amount of uneasiness in the mind of the person who happens to live immediately next to a tank containing a large quantity of gasoline. It is highly inflammable and will explode when brought into contact with flame. Common experience tells us that it must be handled with the utmost care. We also know that it can be properly insulated from flame, and the courts are bound to take judicial cognizance of the comparative freedom from accidents under modern safeguards in the storage and handling of this highly explosive liquid. The following excerpt from a late case shows the extent to which the courts

have applied the common knowledge of the community to establish physical facts. In the case of Electra vs. Cross, 225 S. W. 795, the Court says:

"The allegations contained in plaintiffs' petition to the effect that the construction and maintenance of the filling station will necessarily constitute a public nuisance are but conclusions of the pleader and are equivalent to an allegation that the threatened acts will constitute a nuisance per se. The storage of gasoline for the purpose of supplying customers of such a filling station is common to all such filling stations, and the same may be said of the alleged use of the streets adjacent to the filling station which will be made by the defendant's patrons if they are permitted to carry on the business proposed. The fact, as alleged, that vehicles to be supplied with gasoline from the filling station will be driven across the sidewalk and to a place on the inside of the premises may not be common to all filling stations, but as a matter of common knowledge it is true of most of such stations, as well as business of other kinds, such as wholesale commercial houses and manufacturing plants.

"The petition contained no allegations to the effect that the station complained of will be constructed in a manner different from that in which such stations are usually constructed, or that danger from explosion of gasoline stored therein will be greater than those ordinarily incident to the maintenance of such stations generally, nor does the petition contain any allegation that the defendants will conduct their business or erect the filling plant in an improper or negligent manner.

"It seems to be well settled by the authorities that the construction and maintenance of a filling station, such as the one alleged in the petition, is not a nuisance per se; and counsel for appellant in their argument do not deny that is the general rule of decisions.

"The proposed business of the defendants is a lawful business and the burden was upon the plaintiffs to allege and prove facts which would differentiate it from a business of that kind as it is ordinarily conducted, and the facts relied on must show with reasonable certainty that a nuisance will result from the business complained of.

"To say the least, gasoline is used as a motive power almost as extensive-

ly as is steam. Unless properly insulated from flames, it will explode. But while in a general sense it may be termed an explosive, and therefore dangerous, it does not follow that its storage in tanks of a filling station is necessarily so dangerous as to authorize the issuance of a writ of injunction to restrain such storage as is alleged in plaintiffs' petition. It is a fact known to every one that it can be and is used with safety to propel motorcars and other kinds of machinery all over the land, notwithstanding the fact that while being so used it is kept in close proximity to sparks of fire which explode small quantities of the gasoline as it is fed from the receptacle in which the supply is contained. It is kept with safety in storage at filling stations in almost every town in the country. The danger from explosion while so used or stored is practically eliminated by proper insulation and other preventive methods. Unless it is alleged and proved that such steps will not be taken to avoid the dangers of an explosion, no sufficient showing is made of such dangers from explosion as will authorize the issuance of the equitable writ of injunction to restrain the defendants from supplying the public need by erecting and maintaining the filling station proposed."

Is this Court then to say as a matter of law that the storage of a very large quantity of gasoline in a tank made of iron or steel buried at least two feet underground, which tank is of "design and construction" approved by the Inspector of Buildings of a large city whose special business in the premises is to provide the utmost measure of safety, is per se a nuisance? Or, is the complaining party required to allege and prove that such storage, even under proposed safeguards is in fact a nuisance? It would seem that the latter should be the rule to be followed by the Courts. If after the tanks are accepted as to design by the Building Inspector the abutting property owner is in a position to show then that they are unsafe and therefore do constitute a nuisance, the Court would have jurisdiction and power to determine this precise question, but it should not be called upon to make a decision unless some such showing be made. A decision made under any other circumstances under the facts of this case would be premature and obviously unjust to the property owner wishing to construct a filling station under municipal safeguards and completely complying with all municipal requirements.

The Court is of opinion that the charges of the bill do not, taken in their entirety, and according to their fair import, sufficiently show that the filling station will be a nuisance.

The demurrer will be overruled upon the single ground indicated in the opinion.

NOTE.—As indicated in the aforegoing memorandum, it was not possible because of the structure of the bill of complaint to sustain the demurrer to any particular count. The demurrer, therefore, was overruled generally and the defendants required to answer. The complainants were therefore given leave to produce and did actually produce testimony in support of the allegations of the sixth, seventh and tenth paragraphs of the bill, relating to the action of the Mayor and the nuisance question. The bill was dismissed upon the testimony offered.