MARY G. TIGHE v. CHARLES H. OSBORNE,
INSPECTOR OF BUILDINGS.

*Zoning Ordinance—Validity—Discretion of Administrative
Officer—Provision for Appeal.*

Baltimore City having, under its charter, the right to exercise within the limits of the municipality the full police power of the State, it can pass an ordinance prohibiting the erection of buildings or any use of them which would create hazards from fire or disease, or would menace the public security, health, or morals.                                                   p. 457

The delegation, by the revised zoning ordinance of Baltimore City, to the zoning commissioner, of the power to determine, as a prerequisite to the issue of building permits, whether the buildings or the proposed uses of them would menace the public security, health, or morals, is valid, his discretion in the matter being limited both by provisions in the ordinance itself as to what he shall consider in passing on permits, and by numerous decisions of the Court of Appeals as to what does and what does not bear a substantial relation to the public security, health,, and morals.                                         pp. 457-459

The mere possibility that the zoning commissioner might disregard the limitations upon his discretion contained in the ordinance and the decisions is not ground for declaring the ordinance invalid, since it is not to be presumed that he will do so, and in case he should do so the injured party has a remedy by appeal.                                              p. 459

With the increased tendency to provide in laws and ordinances general rules and standards, leaving to administrative boards and agencies the task of acquiring information, working out the details, and applying these rules and standards to specific cases, the courts have relaxed to some extent the particularity with which they formerly required the laws and ordinances to set out the rules and standards by which the delegated power was to be limited.                                      pp. 462, 463

Since Constitution, art. 4, sec. 28, gives the Baltimore City Court exclusive jurisdiction of appeals arising under Baltimore City ordinances, the provisions in the revised zoning ordinance for appeals from the board of zoning appeals to that court are valid.                                          pp. 464, 465

That the revised zoning ordinance of Baltimore City fails to provide for an appeal to the Court of Appeals does not render the ordinance invalid, there being nothing in the Constitution requiring such a provision.                       p. 465

*Decided April 8th, 1926.*

Appeal from the Baltimore City Court (FRANK, J.).

Mandamus proceeding by Mary G. Tighe against Charles H. Osborne, Inspector of Buildings for Baltimore City. From a judgment for defendant, the petitioner appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*C. Arthur Eby* and *James E. Tippett,* for the appellant.

*Philip B. Perlman, City Solicitor,* and *Wirt A. Duvall, Jr., Deputy City Solicitor,* with whom was *George E. Kieffner, Assistant City Solicitor,* on the brief, for the appellee.

WALSH, J., delivered the opinion of the Court.

This appeal involves the question of the constitutionality of Ordinance No. 522 of the Mayor and City Council of Baltimore, which ordinance undertakes to regulate the issuance of "use" permits in Baltimore City for structures to be used for other than residential purposes.

A case between the same parties was before this Court at the October Term (see *Tighe v. Osborne,* 149 Md. 349),

and we then decided that the ordinance involved in that case, which dealt with the same matter, was unconstitutional, and the case was remanded for further proceedings. Mrs. Tighe, the appellant in both cases, thereupon renewed her application for a building permit to erect a stable for thirty horses on Cokesbury Avenue in Baltimore, and upon her application being refused because of her failure to apply for and secure a "use" permit, she again filed a petition in the Baltimore City Court asking that a mandamus issue compelling the inspector of buildings for Baltimore City, the appellee, to give her a building permit. The answer of the inspector set up as a defense the failure of Mrs. Tighe to comply with the provisions of Ordinance No. 522, regulating "use" permits, which was approved by the Mayor and City Council of Baltimore on December 14, 1925, just four days after the first case of Tighe v. Osborne, supra, was decided, and to this answer the petitioner demurred on the ground that the ordinance was unconstitutional and void. The lower court overruled the demurrer, and, upon Mrs. Tighe declining to plead further, judgment was rendered in favor of the defendant, the inspector of buildings, and from this judgment the petitioner has appealed. As the only difference between the present case and the first case between these parties is to be found in the two ordinances, we think the foregoing statement of the facts and circumstances sufficient, and we will accordingly proceed to a consideration of these ordinances.

The ordinance in the first case was known as Ordinance No. 334, and its chief provisions will be found set out in the opinion in that case, Tighe. v. Osborne, supra. It was held invalid because of the provisions attempting to give the zoning commissioner the power to refuse to grant a permit for a building to be used for any purpose other than a residence where, in his judgment, the use to which such building was to be put or its location "would, in any way, menace the public welfare." In the course of the opinion,

which was delivered by Judge Offutt, the Court, after dis-
cussing generally the police power and calling attention to
the use of the phrase "general welfare" in many definitions
of the power, said: "But the police power even as thus
defined, vague and vast as it is, has its limitations, and it
cannot justify any act which violates the prohibitions, ex-
press or implied, of the State or Federal Constitutions.
*Byrne v. Md. Realty Co.,* 129 Md. 210; *Goldman v. Crow-
ther,* 147 Md. 293. If this were not so and if the police
power were superior to the constitution and if it extended
to all objects which could be embraced within the meaning
of the words 'general welfare' as defined by the lexicograph-
ers, the constitutions would be so much waste paper, because
no right of the individual would be beyond its reach, and
every property right and personal privilege and immunity
of the citizen could be invaded at the will of the State
whenever in its judgment the convenience, prosperity, or
mental or physical comfort of the public required." And
further on it was said that: "Such a grant of power is in
our opinion arbitrary and in conflict with both of the con-
stitutional guaranties referred to above (article 23, Bill of
Rights, and section 40 of article 4 of the Constitution of
Maryland), because it commits to the arbitrary discretion
of subordinate officials the power of depriving the citizen
of his property without compensation by taking from him
the beneficial use thereof, regardless of whether such depri-
vation is required for the protection of the public order,
security, health or morals."

It was accordingly decided in that case that Ordinance
No. 334, under which the zoning commissioner could refuse
to issue permits if "in his judgment, after investigation,
the proposed buildings or structures, use or changes of use,
would create hazards from fire or disease, or would in any
way menace the public welfare, security, health or morals,"
was invalid because the attempted delegation of the power
to determine what structures or uses of them might affect the

"public welfare" was, standing by itself, too broad and indefinite.

The ordinance in the present case contains no reference to "public welfare," it omits entirely sub-section E of section 3, to which special objection was found by the Court in the previous case, and there are several other changes which will be adverted to later on in this opinion. The part with which we are now concerned provides that the zoning commissioner can refuse to issue permits if "the proposed buildings or structures, use or changes of use, would create hazards from fire or disease, or would menace the public security, health or morals," and the chief question to be determined on this appeal is whether this delegation of power by the Mayor and City Council of Baltimore to the zoning commissioner is valid.

In *Tighe v. Osborne, supra,* after discussing generally the police power and the frequency with which the courts have had to deal with it, we said: "While that mass of litigation has resulted in no single comprehensive definition of the power so far as it is applicable to cases like this one, which has been universally accepted, by the weight of authority it has been given a meaning narrower than that first stated, which we think fairly expressed by the following formula, which is that the police power is the power inherent in the state to prescribe within the limits of the federal and state constitutions reasonable regulations necessary to preserve the public order, health, safety or morals."

Applying this formula to the delegation of power contained in the ordinance now before us, we find that we are not required to pass upon any novel or doubtful application of the police power. In fact, the language of this part of the ordinance (aside from the words "hazards from fire or disease" which are really covered by the terms "public security" and "health"), is almost identical with the language of the formula, and it cannot now be doubted that this language correctly designates objects to which it is uni-

versally conceded the police power applies. *Boehm v. Balti-
more,* 61 Md. 259; *Deems v. Baltimore,* 80 Md. 164; *State
v. Broadbelt,* 89 Md. 565; *State v. Hyman,* 98 Md. 596;
*Bostock v. Sams,* 95 Md. 400; *Brown v. Stubbs,* 128 Md.
129; *Byrne v. Md. Realty Co.,* 129 Md. 210; *Goldman v.
Crowther,* 147 Md. 282; *Tighe v. Osborne, supra;* 12 C. J.
913, 916, 918. And as Baltimore City, under its charter,
has the right to exercise within the limits of the municipal-
ity the full police power of the State, no doubt can be enter-
tained as to the authority of the city to pass an ordinance
prohibiting the erection of buildings or any use of them
which "would create hazards from fire or disease, or would
menace the public security, health or morals." *Charter of
Baltimore,* art. 1, sec. 18; *Tighe v. Osborne, supra; Osborne
v. Grauel,* 136 Md. 88; *Brown v. Stubbs, supra; Rossburg
v. State,* 111 Md. 394.

The real question in the case then is not whether the City
of Baltimore had the power to pass an ordinance protecting
the public security, health or morals, but whether it had the
right to delegate to the zoning commissioner the power to
determine, in the manner prescribed by Ordinance No. 522,
whether buildings or the proposed use of them would menace
the public security, health or morals. If this was a ques-
tion of first impression there might be considerable difficulty
in determining it, but the past decisions of this Court, as
well as the prevailing trend of authority elsewhere, seem to
us to have settled the matter. An examination of the opin-
ion in *Tighe v. Osborne, supra,* shows that the chief diffi-
culty with the ordinance in that case was caused by the
phrase "public welfare," and all that was there decided was
that the city could not delegate to any one the power to
decide what was detrimental to the "public welfare." In
the present case there is no such delegation. Here the au-
thority of the zoning commissioner is limited to prohibiting
structures or uses of them which would menace the public
security, health or morals. These things, as we have seen,

are proper objects of the police power, and many of the matters which can legitimately be said to affect any of them, as well as many matters which cannot be properly said to affect them, have been passed upon in previous decisions of this Court. These decisions are binding on the zoning commissioner, and in addition, the ordinance itself provides in section 3 that in passing on permits the commissioner shall give consideration to:

> "(a)   The character and use of buildings and structures adjoining or in the vicinity of the property mentioned in the application; (b) The number of persons residing, studying, working in or otherwise occupying buildings adjoining or in the vicinity of the property mentioned in the application; (c) The location, kind and size of surface and sub-surface structures in the vicinity of the property mentioned in the application, such as water mains, sewers and other utilities; (d) Traffic conditions in so far as they or any of them relate to hazards from fire or disease, or to the public security, health, or morals."

It is thus apparent that the ordinance does not vest an unlimited discretion in the zoning commissioner. He can not refuse a permit unless the building or its proposed use would menace the public security, health or morals; he is required to secure information about and give consideration to all the matters just enumerated in reaching a decision; and finally, he is bound by numerous decisions of this Court as to what does and what does not bear a substantial relation to the public security, health or morals. Among these decisions are *Cochrane v. Preston,* 108 Md. 220, holding that a limitation on the height of buildings was valid; *Byrne v. Md. Realty Co., supra,* holding that an act prohibiting the erection of dwelling houses in a certain part of Baltimore City unless of brick, semi-detached and at least ten feet apart, or if of frame, twenty feet apart, is invalid; *Brown v. Stubbs, supra,* holding that an ordinance requiring the

assent of the Mayor and City Council of Baltimore to the licensing of buildings for moving picture shows was valid; *State v. Hyman, supra,* holding that an act requiring, *inter alia,* a permit to manufacture coats, etc., in a tenement, and authorizing an inspector to revoke the permit at any time the health of the community required it, was valid; *Goldman v. Crowther, supra,* holding that certain provisions in the ordinance in that case attempting to regulate the use of property were void; *Bostock v. Sams, supra,* holding that a municipal ordinance providing that no building could be erected without securing a permit from the appeal tax court and that "no such permit shall be granted unless in the judgment of the judges of the appeal tax court or a majority of them, the size, general character and appearance of the building to be erected will conform to the general character of the building previously erected in the same locality and will not in any way tend to depreciate the value of the surrounding improved or unimproved property" was void; and *Stubbs v. Scott, supra,* in which it was held that the building inspector of Baltimore City could not, under the ordinances then existing, lawfully refuse to issue a building permit for a building to be erected in a residential neighborhood simply because the proposed structure was to be used for store purposes. The foregoing considerations make it abundantly evident that the ordinance before us contains many limitations on the powers of the zoning commissioner, and while he could disregard these limitations, it is not to be presumed that he will do so, nor is such a possibility a proper ground for declaring the ordinance invalid. *State v. Hyman, supra.* And should these limitations be disregarded the party injured thereby has a right of appeal to the board of zoning appeals, and thence to the Baltimore City Court, under section 2 of the ordinance.

And finally, there is ample authority to sustain even broader delegations of power to administrative boards or

subordinate officials. It was strongly intimated throughout the majority opinion in *Tighe v. Osborne, supra,* that the delegation of power contained in the ordinance involved in that case would have been valid had the phrase "public welfare" been omitted from the ordinance. Not only has that phrase been eliminated from the ordinance we are now considering, but, in addition, the provision in the first ordinance authorizing the commissioner to refuse a permit if the building or its use would "in his judgment * * * in any way menace the public welfare," etc., has been changed, and in the present ordinance the commissioner is authorized to refuse a permit only when the building or its use "would menace the public security," etc. In *State v. Hyman, supra,* the delegation by the Legislature to an inspector of the power to determine when the manufacture of clothing in a tenement was detrimental to the health of the community was upheld as valid; in *Smith v. Standard Oil Co. of N. J.,* 149 Md. 61, we held valid two ordinances of Baltimore City requiring any one who desired to erect a livery stable, junk shop, garage, gasoline service station, etc., to first secure a permit from the Mayor; and in the very recent case of *Baltimore v. Bloecher & Schaaf et al.,* 149 Md. 648, we sustained an ordinance of the Mayor and City Council of Baltimore which authorized the health commissioner or his inspectors to condemn meat which was found to be intrinsically unsound, unhealthful, unwholesome or otherwise unfit for human food, and which further authorized the condemnation of meat products prepared under conditions so unclean or unsanitary as to induce a reasonable belief that they had thereby been rendered unsound, unclean, unwholesome and unfit for human food. This ordinance did not provide any more definite formula than that contained in the phrase "unfit for human food" by which the wholesomeness of meat could be determined, but on the contrary it directed the health commissioner to have inspections made by experts in sanitation, so that he could acquire the neces-

sary information about the places in which meat was pre-
pared or offered for sale, and it amounted in effect to dele-
gating to the health commissioner the power to condemn
and prohibit the sale of meat or meat products which would
injure the public health.    The inspectors are specifically
directed to consider whether the meats contain dyes, chem-
icals, preservatives or other injurious ingredients, just as
in the ordinance now before us the zoning commissioner is
required to consider the matters set out in section 3, but
general authority to condemn meats found to be "unfit for
human food" (that is, "detrimental to the public health")
is given in the meat ordinance, just as authority is given in
Ordinance No. 552 to prohibit the erection of buildings or
uses of them which would menace the public security, health
or morals.

In *Osborne v. Grauel, supra,* the Court declined to compel
by mandamus the issuing by the building inspector of a
permit for a garage, it appearing that the permit had been
disapproved by the Mayor under the authority of an ordi-
nance of Baltimore City requiring him to investigate all
applications for garages and to approve them, before a per-
mit could be granted.    The validity of this delegation of
power to the Mayor seems to have been conceded in the
case, the chief point raised being as to the validity of the
reasons assigned by him in disapproving the permit.    In
*Creaghan v. Baltimore,* 132 Md. 442, this Court sustained
as valid an ordinance authorizing the commissioner of
health of Baltimore City to prohibit the sale of milk within
the city if the producers' of the milk did not store, keep and
distribute it in accordance with such regulations as the com-
missioner might adopt to insure its being safe for human
consumption, and also authorizing him to prohibit its sale
if in his "opinion" it was kept, stored or distributed under
such conditions as to render it unsuitable for human food.

In *Mutual Film Corporation v. Ohio Industrial Com.,*
236 U. S. 230, the Supreme Court upheld as valid a statute

which delegated to the board of moving picture censors the power to prohibit the exhibition of moving picture films which were not "in the judgment and discretion of the board of censors of a moral, educational or amusing or harmless character."

In *United States v. Grimaud,* 220 U. S. 506, an Act of Congress giving the Secretary of Agriculture the power to provide rules governing forest reservations, and making the violation of such rules a criminal offense, was held valid.

In *Wilson v. Eureka City,* 173 U. S. 32, an ordinance requiring the written permission of the Mayor of a town before any person was allowed to move a building along the streets was upheld.

In *Blue v. Beach,* 155 Ind. 121, it was held that, under a general statutory authority to prevent the spread of contagious and infectious diseases, a rule of the state board of health upon the subject of vaccination was not legislative.

And to the same general effect see *Boehm v. Baltimore, supra; Downs v. Swann,* 111 Md. 53; *State v. Loden,* 117 Md. 384; *Scholle v. State,* 90 Md. 729; *State v. Broadbelt, supra; Deems v. Baltimore, supra; Isenhour v. State,* 157 Ind. 517; *State v. Normand,* 76 N. H. 541; *Train v. Boston Disinfecting Co.,* 144 Mass. 523; *Newark Horse Car Rwy. Co. v. Hunt,* 50 N. J. Law, 308; *Mahler v. Eby,* 264 U. S. 32, 40; *Union Bridge Co. v. United States,* 204 U. S. 387; *Field v. Clark,* 143 U. S. 649; *Buttfield v. Stranahan,* 192 U. S. 470; *Philadelphia Co. v. Stimson,* 223 U. S. 605.

The foregoing authorities seem to us to establish conclusively the validity of the delegation of power contained in Ordinance No. 522. It may be that the language used in some of the earlier decisions of this and other American courts is at variance with this conclusion, but certainly the more modern decisions amply and specifically sustain it. The change, if there has been any, is due to the constantly increasing complexity of modern society and the consequent multiplicity of matters which require the state's attention.

The field has become so vast, and the things to be considered so enlarged in number and so interrelated with one another, that it has been found practically impossible to provide in laws and ordinances specific rules and standards by which every conceivable situation can be measured and determined. The result has been that we have turned more and more to the plan of providing in our laws and ordinances general rules and standards, and leaving to administrative boards and agencies the task of acquiring information, working out the details, and applying these rules and standards to specific cases. This is not considered a delegation of legislative authority, though it probably does represent an expansion of administrative power. We think the ordinance now under consideration is one of this class, and that the rules and standards which it provides for the regulation of the zoning commissioner furnish a sufficient limitation upon the discretion it vests in him.

Such ordinances represent no change in principle; they merely indicate that the courts, faced by at least an apparent necessity, have relaxed to some extent the particularity with which they formerly required the laws and ordinances to set out the rules and standards by which the delegated power was to be limited, and whatever may be said of the wisdom of this relaxation, no doubt can now be entertained as to its sanction by the great weight of authority in this country. See cases cited *supra.*

The cases of *Baltimore v. Radecke,* 49 Md. 230, and *Hagerstown v. Baltimore and Ohio R. Co.,* 107 Md. 178, have been so often explained and distinguished in prior decisions from cases like the present one that we do not think it would serve any useful purpose to again discuss them, and so we will not do so. And because of a similar frequency of discussion and citation, we have also refrained from commenting on the cases of *Easton v. Covey,* 74 Md. 262, and *Farmers and Planters' Company v. Salisbury,* 136 Md. 617.

This brings us to a consideration of that part of Ordinance No. 522 which provides for an appeal from the zoning commissioner to the board of zoning appeals, and from that body to the Baltimore City Court. The ordinance provides that on this last-mentioned appeal "The court shall decide whether the order, decision or determination complained of is arbitrary, unreasonable, unwarranted, or unlawful," and the court is also given authority to remand the case for the taking of additional testimony. Section 28 of article 4 of the Maryland Constitution gives the Baltimore City Court exclusive jurisdiction of appeals arising under the ordinances of the Mayor and City Council of Baltimore, and, so far as we are advised, no one has ever seriously questioned the right of the city, under this constitutional provision, to provide in its ordinances for appeals to the Baltimore City Court, and such provisions have been made in numerous instances. See Ordinances of Mayor and City Council of Baltimore.

In *State v. Rutherford,* 145 Md. 363, 369, the provisions for an appeal from the board of zoning appeals to the Baltimore City Court in Ordinance No. 922 of Baltimore City (subsequently held void on other grounds in *Goldman v. Crowther, supra,*) were apparently conceded to be valid and were so treated by the Court. In the case last mentioned the Court again intimated, though it expressly refrained from deciding, that these same provisions were valid. And in *Baltimore v. Bloecher & Schaaf, Inc., supra,* we expressly held that the provisions for an appeal from the health commissioner to the Baltimore City Court contained in Ordinance No. 431 of the Mayor and City Council of Baltimore (commonly called the "Meat Ordinance"), were valid, the Court saying: "The Baltimore City Court having been designated by the Constitution as the tribunal to hear all appeals arising under the ordinances of the Mayor and City Council of Baltimore, it was within the power of that municipality, in order to secure uniformity in the ad-

ministration of the law, to provide for an appeal from the determination by administrative or executive agencies of questions of law to that court and we do not understand that in doing that it enlarged or changed its jurisdiction. And while it provides for no appeal from the decisions of such agencies upon issues of facts, nevertheless persons aggrieved thereby would not be injured because, if such decisions were unreasonable, arbitrary or oppressive, they could be reviewed and corrected upon application to a court of chancery."

We think these authorities amply sustain the validity of the provision for an appeal to the Baltimore City Court contained in the ordinance now before us. Under these provisions the board of zoning appeals must furnish the court with "all papers, documents and memoranda" relating to the case appealed; the court is authorized to determine whether the action appealed from was "arbitrary, unreasonable, unwarranted or unlawful"; it is given "power to remand the case * * * for the taking of additional testimony, and to pass any order which it may deem proper in the premises"; and finally it is authorized "to reverse, affirm or modify the order, decision or determination complained of." These provisions are more ample than the appeal provisions contained in the ordinance approved in *Baltimore v. Bloecher & Schaff, Inc., supra,* and apparently confer a wider jurisdiction than do those provisions. In fact, they seem practically to amount to authorizing a trial *de novo* on appeal, as did the ordinance considered in *State v. Rutherford, supra,* and, in our opinion, there is nothing in them which could in any way be held to render Ordinance No. 522 invalid.

Nor does the failure of the ordinance to provide for an appeal to this Court render it invalid. There is nothing in the Constitution requiring such a provision, and there is ample authority sustaining the validity of laws under which there is no appeal to the Court of Appeals, but which nevertheless concern rights just as well established and important

as are those involved in this ordinance. *Dolfield v. West.
Md. R. Co.,* 107 Md. 584; *New York Mining Co. v. Midland
Co.,* 99 Md. 506; *Hopkins v. Phila., W. & P. R. Co.,* 94
Md. 263; *Moores v. Bel Air Water and Light Co.,* 79 Md.
391; *Francis v. Weaver,* 76 Md. 457; *Greenland v. County
Commissioners,* 68 Md. 59; *Hendrick v. State,* 115 Md. 552;
*Rayner v. State,* 52 Md. 368; *Judefind v. State,* 78 Md.
510; *Green v. State,* 113 Md. 451.

Without further prolonging this opinion it is sufficient to
say that for the reasons heretofore given, we think Ordi-
nance No. 522 of the Mayor and City Council of Baltimore
is valid, and we will accordingly affirm the action of the
learned court below in overruling the petitioner's demurrer
to the defendant's answer, and rendering a judgment for
the defendant.

*Judgment affirmed, with costs.*

Digges and Parke, JJ., dissent.