MAYOR AND CITY COUNCIL OF BALTIMORE ET
AL. *v.* BLOECHER & SCHAAF, INC., ET AL.

*Validity of Ordinance—Inspection of Meat Products—Discretion of Inspectors—Constitutional Law.*

The state may regulate the business of slaughtering animals
and the preparation and sale of the carcasses for human food.

p. 650

The Mayor and City Council of Baltimore had the power,    .
under its charter, to adopt an ordinance regulating the business
of slaughtering animals and the preparation of meat products.

p. 651

Baltimore City Ordinance No. 431, secs. 7, 10, in providing
that the commissioner of health shall refuse to approve and pass
the products of any establishment in which certain animals are
slaughtered and the meat and meat food products thereof are
prepared for sale or sold, if the sanitary conditions of such establishment are found, upon inspection by inspectors appointed by
him, to be such that the meat or meat food products are rendered
unfit for human food, is not invalid as delegating to the inspectors an arbitrary discretion, under which they could refuse to
pass perfectly sound and wholesome meat merely because the
establishment in which it was prepared did not in their opinion include the latest sanitary appliances and improvements,
the reference to the sanitary conditions of the establishments
meaning merely that the products may be condemned if the
conditions of an establishment are such as to render it impossible to say that the products are sound and fit for food.

pp. 652-657

In Ordinance No. 431 of Baltimore City, which provides for
the inspection of meat and meat food products, the express
exemption from its requirements of such establishments as are
subject to the inspection and regulation of the United States
government, does not render the ordinance so partial and unequal
in its application as to deny the equal protection of the law.

pp. 657-659

The validity of the ordinance is not affected by the fact that it expressly provides that swine slaughtered or swine products prepared on a farm may be delivered for sale to any dealer or consumer in the city, and shall be subject only to such regulations for inspection as shall be made by the commissioner of health.                                                  p. 659

The title of Baltimore City Ordinance No. 431, providing for the inspection of meat and meat food products, sufficiently describes the subject of the ordinance to satisfy the city charter requirement.                                                  p. 659

In passing upon the constitutionality of a statute, it is proper to consider, not what may be done in violation thereof, but only what may validly and naturally be done.                     p. 660

Baltimore City Ordinance No. 431, providing for the inspection of meat and meat food products, is not invalid because it provides for an appeal to the Baltimore City Court from any adverse action by the commissioner of health, and limits the jurisdiction of that court, on appeal, to a consideration of questions of law.                                          pp. 660, 661

*Decided January 14th, 1926.*

Appeal from the Circuit Court No. 2 of Baltimore City (STEIN, J.).

Bill by Bloecher & Schaaf, Inc., and others, against the Mayor and City Council of Baltimore, and C. Hampson Jones, Commissioner of Health for Baltimore City. From an order overruling a demurrer to the bill and declaring the city ordinance in question void, defendants appeal. Reversed and bill dismissed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Philip B. Perlman, City Solicitor,* and *Charles C. Wallace, Assistant City Solicitor,* for the appellants.

*Alfred S. Niles* and *Joseph W. Starlings,* for the appellees.

OFFUTT, J., delivered the opinion of the Court.

The seventy-one appellees in this case have for periods ranging from eleven to fifty-six years been engaged in the City of Baltimore in the business of slaughtering animals, the flesh of which is fit for food, and of the preparation and sale of the flesh thereof for human consumption.

On June 25th, 1925, the Mayor and City Council of Baltimore adopted Ordinance No. 431, known as the "Meat Ordinance," the subject and purpose of which was to regulate that business so as more effectually to preserve and protect the public health.

On August 22nd, 1925, the appellees filed, in Circuit Court No. 2 of that city, the bill of complaint in this case, in which they prayed that that ordinance might be declared unconstitutional and void, and that an injunction issue restraining the appellees from executing or in any manner enforcing the provisions thereof. A demurrer filed to the bill was overruled, and the ordinance declared void by an order of that court, passed on August 25th, 1925, and from that order this appeal was taken.

It presents a single issue, to wit, is Ordinance No. 431 a valid and constitutional exercise of legislative power by the Mayor and City Council of Baltimore City.

Much of the bill of complaint as well as the briefs is devoted to a discussion of the wisdom, the necessity, and the propriety of the ordinance, but since those are legislative rather than judicial questions, we will not refer to them further than to say this, that in view of the decisions of this Court, as well as of the courts of practically every other state and the federal government, it is now too late to deny the power of the state to regulate any business which if unregulated may menace the public health, and that the slaughtering of animals and the preparation and sale of the carcasses thereof for human food is such a business, and those propositions appear to be conceded by the appellees, *Slaughter House Cases,* 16 Wall. 36, and Rose's Notes; *State v. Broadbelt,* 89 Md. 565; *Schultz v. State,* 112 Md.

211; *Foote v. Stanley,* 117 Md. 335.    Nor have we any doubt that under its charter the Mayor and City Council of Baltimore had the power to adopt an ordinance of the character of that under consideration.    *Schultz v. State, supra.*

We will, therefore, proceed at once to those definite and specific objections to the ordinance urged by the appellees, which may properly be considered by this Court.

In their very careful and exhaustive brief, counsel for the appellees state that their objections are confined to sections 7, 10, 14 and 15 of the ordinance, and it is not therefore necessary, in referring to the other sections thereof, to do more than state their general tenor, so that their relations to the parts objected to by the appellees may appear.

Section 1 creates a meat inspection division in the department of health of Baltimore City, and provides for the appointment and compensation of the officers and agents thereof.    Section 2 provides for licensing any business directly connected with the disposition of animal products in Baltimore City.    Section 3 provides for the inspection of animals about to be slaughtered and of the carcasses of those which have been slaughtered, and for the condemnation and destruction of such as may be found unfit for human consumption.    Section 4 provides for the inspection and marking of all carcasses intended for human consumption, for the condemnation and destruction of such as may be unfit for human consumption, and for revoking the licenses of such operators as refuse to destroy condemned material in the manner provided by the ordinance.    Section 5 provides for the inspection and marking of all canned meat products prepared for consumption and sale in Baltimore City, for the destruction of such products as may be condemned, and for revoking the license of such persons as refuse to destroy the condemned products.    Section 6 provides for labeling and marking such material as may be approved by the inspectors.    Section 8 provides for the inspection of the actual slaughtering of animals.    Section 9 prohibits the forgery, mutilation,

destruction, simulation or misrepresentation of the marks, tags, labels, or other identification marks used under the ordinance. Section 11 prohibits influencing inspectors in the discharge of their duties by bribes and at the same time forbids the inspectors from accepting bribes given to influence their official acts. Section 12 relates to the revocation of licenses by the Commissioner of Health, and contains, among others, these provisions: "Before the Commissioner of Health shall revoke any license issued under the provisions of this ordinance for any violation thereof, the said Commissioner shall notify the applicant of the alleged violation and that an opportunity will be given him to show cause why the license should not be revoked; * * * and at the hearing the Commissioner shall decide the matter, and if he shall be of opinion that a violation has been proved, he shall forthwith revoke the license and such revocation shall be for such period of time as he shall stipulate, but in no event for more than one year. * * * From any adverse action of the Commissioner, there shall be an appeal to the Baltimore City Court, to be taken within twenty (20) days from the date of said action. * * * The jurisdiction of the Baltimore City Court on appeal shall be limited to the question of the legality of the order, decision, action or determination complained of. Provided, that pending the hearing of appeal, no order of revocation shall be stayed." Section 13 fixes the penalties for violations of the ordinance, and section 16 provides for the repeal of Ordinance 204 and the refund of license fees paid thereunder.

The first part of the ordinance to which the appellees object is section 7, which is in this form: "That the Commissioner of Health shall cause to be made from time to time by experts in sanitation, and by other competent inspectors, such inspection of all slaughtering, meat, canning, salting, packing, rendering or similar establishments in which cattle, sheep, swine and goats are slaughtered and the meat and meat food products thereof are prepared for sale, offered for sale, or sold in the City of Baltimore, as may be neces-

sary to inform himself concerning the sanitary conditions of the same, and where the sanitary conditions of any establishments are such that the meat or meat food products are rendered unclean, unsound, unhealthful, unwholesome or otherwise unfit for human food, the Commissioner of Health shall refuse to allow said meat or meat food products to be labeled, marked, stamped and tagged 'Inspected and Passed.' " Their objection to that provision is that it delegates to the meat inspectors an arbitrary discretion, unguided and uncontrolled by any standards, rules or regulations. under which they could without any legitimate or legal reason suppress at will the businesses of the several complainants, each of which embraces tangible property as well as the right to trade, which is a valuable property right.

If that construction can fairly be placed on the language of the section, it must inevitably follow that it is void, because in the absence of any overwhelming necessity for subordinating private rights to the public safety, it would be obnoxious to those provisions of the state and the federal constitutions which guarantee to the citizen the equal protection of the laws, and security in the possession of his property. *Baltimore v. Radecke,* 49 Md. 217; *Bostock v. Sams,* 95 Md. 400; *Goldman v. Crowther,* 147 Md. 282. But we do not think that it can be thus construed.

The appellees contend that under it the inspectors could refuse to mark, approve, and pass meat which was perfectly sound, wholesome, and good, because the establishment in which it was prepared did not in their opinion include the latest sanitary appliances and improvements, regardless of whether they were at all essential to the proper and sanitary preparation of animal food products for human consumption, and could thereby impose upon establishments having but a small capital, but which nevertheless were operated in a sanitary and wholly unobjectionable manner, and turned out wholesome and sanitary products, burdens and expenses which would destroy them, and that from their decisions there could be no appeal. But the section neither says nor

means that. Its primary, patent and essential purpose is to confer upon the inspectors the power to condemn material which is intrinsically unsound, unhealthful, unwholesome, or otherwise unfit for human food, and it confers upon them no other or broader power whatsoever. They cannot under any power conferred by the ordinance refuse to "pass" products which are wholesome and fit for human food, unless they condemn them, and they cannot condemn them for the sole reason that the establishments in which they are produced do not conform to standards, regulations and requirements not fixed by the ordinance. And the reference to the sanitary condition of the establishments where such products are prepared, contained in that section, means nothing more than this, that where such establishments are so negligently operated, and the conditions surrounding the preparation of their products so filthy or unsanitary, that as a matter of common and usual experience it would be impracticable if not impossible to say with certainty that the products were sound, wholesome and fit for food, that they may be condemned. And if, in the exercise of that discretion, they act arbitrarily, or unreasonably, or exceed the power conferred by the ordinance, those injured thereby can obtain relief from the courts. *Stubbs v. Scott,* 127 Md. 86. No part of the ordinance attempts to regulate the character of the establishments, appliances and equipment for slaughtering animals and preparing their carcasses for human food, but its scope is confined to the character of the products sold or prepared by them, and unless those instrumentalities are so obviously unfit, unsuitable, or insufficient for the preparation of wholesome and sanitary products as to make it improbable as a practical matter that food prepared by them could be sanitary or wholesome, they could not under any power conferred by the ordinance directly or indirectly be condemned, if their products upon inspection were found to be wholesome and sanitary. It is true that the section fails to define the word sanitary, but it is evident from the whole enactment and from the particular context that it is to be

given its ordinary and accustomed meaning. And as thus defined it means that which pertains to health, with especial reference to cleanliness and freedom from infective and deleterious influences. It is not contended by the appellants that it confers upon the inspectors the power to determine the character of or prescribe the construction, the size, or the methods of operating the establishments affected by the ordinance, and clearly it does not have that effect. If it had been intended to deal with those matters, necessarily it would have made suitable provision for the adoption, by competent legislative or administrative authority, of definite rules and regulations for the construction, equipment and operation of establishments for the slaughter of animals for food and for the preparation of the flesh thereof for human consumption, as was done in the federal statute which is in many respects similar to the enactment now under consideration. That statute provides: "The secretary of agriculture shall cause to be made, by experts in sanitation or by other competent inspectors, such inspection of all slaughtering, meat, canning, salting, packing, rendering, or similar establishments in which cattle, sheep, swine and goats are slaughtered and the meat and meat food products thereof are prepared for interstate or foreign commerce as may be necessary to inform himself concerning the sanitary conditions of the same, and to prescribe the rules and regulations of sanitation under which such establishments shall be maintained; and where the sanitary conditions of any such establishment are such that the meat or meat food products are rendered unclean, unsound, unhealthful, unwholesome, or otherwise unfit for human food, he shall refuse to allow said meat or meat food products to be labeled, marked, stamped, or tagged as 'inspected and passed.'" *Barnes' Federal Code,* p. 1980. The section under consideration, while similar in other respects to the federal statute, omits that part which authorizes the adoption of rules and regulations of sanitation under which such establishments may be maintained, and thereby conclusively indicated that it did not intend to deal with that question.

Section 10 directs the Commissioner of Health to cause the inspectors to make the examinations required by the ordinance, and it then provides: "And the said inspectors shall refuse to stamp, mark, tag or label any carcass or part thereof, or any meat food products therefrom prepared or offered for sale or sold in any establishment hereinbefore mentioned until the same shall have been actually inspected and found to be sound, healthful, wholesome and fit for human food and contain no dyes, chemicals, preservatives or ingredients which render such meat and meat food products unsound, unhealthful, unwholesome, unfit for human food, or so altered in appearance as to simulate a fresh sound product, and have been prepared under proper sanitary conditions as hereinbefore provided for; and said inspectors shall perform such other duties as are provided for by this ordinance and as may be prescribed by the Commissioner of Health." The objection of the appellees to that section is much the same as that made by them to section seven, and is particularly directed to that part of it which directs the inspectors to refuse to approve any product which has not been prepared under proper sanitary conditions, "as hereinbefore provided for."

That expression is also taken from the federal act, but it would be wholly inapplicable here, if by its use it had been intended to confer upon the inspectors the power to condemn establishments as well as the products thereof, for the ordinance under consideration does not "provide for" or define "proper sanitary conditions" while the federal act does. And that is the construction placed upon it by the appellants where in their brief they say: "The section says in so many words if the meat or meat food products, upon inspection are found to be in fact unfit for human food and caused by unsanitary conditions such meat or meat food products shall not be passed. It is the meat and its products that are condemned, not the establishment." Construing the language in connection with the other parts of the ordinance, and construing it in accordance with the obvious intention of the

Mayor and City Council of Baltimore City, it means that where meat products are prepared under conditions so unclean or unsanitary, as to induce a reasonable belief that they have thereby been rendered unsound, unclean, unwholesome and unfit for human food, they may be condemned. Given that meaning, what we have said of section 7 applies with equal force to this section, and it is unnecessary to discuss it further than to say that in our opinion it is a reasonable regulation, having a direct relation to the protection of the public health, and that it violates no provision of the state or federal constitutions.

Section 14 exempts from the operation of the ordinance all establishments subject to the inspection, regulation and examination of the United States government under the Act of March 4th, 1907 (*Barnes' Code,* par. 8257), and section 15 provides: "That swine produced and slaughtered or any swine products prepared for market on the farm where said swine are produced by a bona-fide farmer may be delivered for sale to any dealer in or consumer of such products in the City of Baltimore, and such swine or swine products shall only be subject to such regulations for inspection as shall be made by the Commissioner of Health to govern the slaughter and preparation for market and sale of such swine or swine products."

The appellees contend that those provisions render the ordinance so partial and unequal in its application as to deny the plaintiffs the equal protection of the law. But we cannot agree with that contention. In each instance there is a sound, logical and sufficient reason for the exemption. The object of the ordinance is to protect the health of the citizens of Baltimore City, by insuring, through adequate inspection, the soundness, wholesomeness and purity of the meat products offered or prepared for sale therein and all the machinery provided by it is created for that specific purpose. And where that object in respect to the products of a certain class of establishments, to wit, those engaged in interstate commerce, already has been accomplished by the federal gov-

crnment through its agents, there is no good reason why the taxpayers of Baltimore City should be burdened with the expense of duplicating their work, especially in view of the fact that any municipal legislation affecting those establishments would be wholly nugatory in so far as it conflicts with the federal statute. The case of *Sterett & Oberle Packing Co. v. Portland,* 79 Oreg. 260, reaches a contrary conclusion, but in that case the federal statute was found to be less stringent in its provisions than the ordinance under consideration, while here the federal statute is, if anything, more·stringent in its provisions than the ordinance. For although the provisions of the federal statute relating to the inspection, approval and condemnation of meat food products are substantially the same, yet the statute contemplates the regulation of the establishments as well as the products thereof, and in that respect is more exacting than the ordinance. In· *State v. Maheu,* 115 Me. 316, it was held that an ordinance· containing an exemption similar in character was valid, although the precise question raised here was not considered. But considering the identity of purpose of the statute and the ordinance, and that the means adopted to effect that purpose by the statute are if anything more stringent than those adopted by the ordinance, we do not see how the exemption of establishments subject to federal inspection is a discriminatory or unreasonable classification, or how it can possibly injure the other class which is subject to the provisions of the ordinance, even though there may be minor and unimportant differences in the regulations adopted for· effecting the respective purposes of the statute and the ordinance. It is of course possible that that situation may be· changed by further legislation lessening the stringency of the federal regulations, but if that should be done, the Mayor· and City Council would have the same power that it has now, to adopt such further ordinances as might be necessary to insure uniformity and equality in the administration of the law. And while there is undoubtedly force in the appellees' contention, the case in this court is not one of first

impression and we are unable to distinguish it in principle from that of *Scholle v. State,* 90 Md. 738, which upheld a similar exemption.

The next objection urged to the ordinance is that the title is defective. But we see no force in that contention. It appears to be based upon the assumption that the ordinance confers upon the health commissioner power to "close up any establishment from which he may think unwholesome products will come." But in our opinion it has no such effect, and since it fully and sufficiently describes the ordinance in all other respects, it gratifies all the requirements of the Baltimore City charter. See Bagby's Code, page 85, for cases dealing with this and the analogous provision of the State Constitution.

Nor is there any apparent justification for the objection to the exemption made by section 15. It is similar to that contained in the federal act, and in principle has been sanctioned by this Court in such cases as *State v. Broadbelt,* 89 Md. 582. The reasons for such a classification have been very clearly stated in *Sterett & Oberle Packing Co. v. Portland,* 79 Oreg. 260. Aside from the fact that the statute under consideration would have been unenforceable beyond the limits of Baltimore City, the expense and practical difficulties of inspecting the slaughter of swine or the preparation of swine products on every farm large or small which may send its products to Baltimore City for sale, would have been disproportionate to the benefit derived therefrom. For it is unlikely that the casual and occasional slaughtering of swine and the preparation of swine products in the country on the farms where they are grown will be attended with the same danger of infection and disease as in a thickly settled and populous city.

The next general objection to the ordinance is that it commits to the Commissioner of Health of Baltimore City the power to regulate the sanitation of slaughter and packing houses and other places where meat food products are prepared, kept or sold, which the State has already by a public

general law (article 43, section 201, etc., Bagby's Code) given to the State Board of Health. That objection is also based upon a misconstruction of the ordinance, because it neither directly nor by implication attempts to confer any such power. It involves the proposition that the health commissioner and inspectors will act unreasonably, will exceed their powers, and ignore their duties. But in passing upon the constitutionality of a statute, we are not at liberty to consider what may be done in violation of it, but must consider only what may validly and naturally be done under it.

There was a further objection that the ordinance permitted the health commissioner or the inspectors to do certain acts, withdrawing inspectors altogether from their establishments, without notice and without any opportunity for them to be heard in their defence, although such acts might lessen the value of their property and destroy the business in which they were engaged. But it is conceded by the appellant that it confers no such power, and a careful examination of it supports that concession. For from its plain language it is clear that inspectors may not be withdrawn until the license of the supposed offender has been revoked, and that such license may not be revoked until he has had notice and an opportunity to be heard.

The final objection suggested in the bill of complaint, although not pressed in this Court, is that the ordinance is invalid because it provides for an appeal to the Baltimore City Court, and limits the jurisdiction of that court on appeal to a consideration of the legality of the act or acts of the persons charged with the administration of the law in issue on the appeal.

In *Goldman v. Crowther,* 147 Md. 310, this Court held that the Mayor and City Council of the City of Baltimore might by ordinance provide for appeals from the acts of the governmental agencies, engaged in executing the ordinances and administering the government of that city, to the Baltimore City Court. The ordinance under considera-

tion in that case provided for an appeal to the Baltimore City Court, which by section 28, article 4, Md. Const., is given exclusive jurisdiction of appeals arising under the ordinances of the Mayor and City Council of Baltimore, and it did not attempt to enlarge or restrict the jurisdiction of that court, but merely authorized persons aggrieved by the decision of the zoning board of appeals to invoke a jurisdiction which had already been created by the constitutional provision referred to.

Nor does the ordinance under consideration go further than that. It was not essential to its validity that it provide for any appeal at all, and *a fortiori* it was not necessary that it provide for an appeal on questions of fact. The Baltimore City Court having been designated by the Constitution as the tribunal to hear all appeals arising under the ordinances of the Mayor and City Council of Baltimore, it was within the power of that municipality, in order to secure uniformity in the administration of the law, to provide for an appeal from the determination by administrative or executive agencies of questions of law to that court, and we do not understand that in doing that it enlarged or changed its jurisdiction. And while it provided for no appeal from the decisions of such agencies upon issues of facts, nevertheless persons aggrieved thereby would not be injured because, if such decisions were unreasonable, arbitrary or oppressive, they could be reviewed and corrected upon application to a court of chancery.

In our opinion, therefore, Ordinance No. 431 of the Mayor and City Council of Baltimore is a valid enactment, and the demurrer to the bill of complaint should have been sustained, and the bill dismissed.

The order appealed from will, therefore, be reversed and the case remanded for further proceedings, in accordance with the views expressed in this opinion.

*Order reversed, and bill dismissed, with*
*costs above and below to the appellant.*