PORTSMOUTH STOVE AND RANGE COMPANY *v.*
MAYOR AND CITY COUNCIL OF
BALTIMORE ET AL.
[No. 58, October Term, 1928.]

*Decided January 16th, 1929.*

The cause was argued before Bond, C. J., Pattison, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Charles C. Wallace* and *Edward H. Hammond,* with whom were *Wallace & Hammond* on the brief, for the appellant.

*Simon E. Sobeloff, Deputy City Solicitor,* and *Ernest F. Fadum, Assistant City Solicitor,* with whom was *A. Walter Kraus, City Solicitor,* on the brief, for the appellees.

SLOAN, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court No. 2 of Baltimore City, sustaining a demurrer to the appellant's bill of complaint praying an injunction to restrain the Mayor and City Council of Baltimore and its commissioner of health from enforcing certain ordinances of the city for the licensing and regulating the sale and installation of manufactured (illuminating) gas appliances in Baltimore City, and praying also that the ordinances may be declared void.

By Ordinance No. 436, passed July 7th, 1925, and amended by Ordinance No. 1063, passed May 6th, 1927 (City Code of 1927, 561), it was provided that, "No tubing, appliance, appurtenance or device for use with, by or for the combustion of manufactured (illuminating) gas shall be sold or offered for sale, connected or installed in the City of Baltimore unless the type, sample or model thereof shall be registered with the commissioner of health of Baltimore City." Forms of application to the commissioner are provided for, "and the applicant shall furnish such information and certificates and cause such tests to be conducted as may be required by the commissioner of health to secure proper registration and identification of any such tubing, appliance, appurtenance, device, sample or model thereof; and before such application shall be approved by the commissioner of health he shall determine whether said tubing, appliance etc. conforms to the rules, regulations and specifications * * *," provided for in section 11 of the ordinance, which are the rules and specifications, with certain omissions, of the American Gas Association.

By section 11½ (City Code, 566), which is an addition to the other ordinances mentioned, as ordained by Ordinance No. 361, passed April 16th, 1928, it was provided: "Whenever the commissioner of health shall determine that before passing upon any application for registration it is necessary and/or desirable to test in a laboratory or testing agency any tubing, appliance, appurtenance or device offered for registration in order to determine whether or not the same com-

plies with the specifications prescribed by him under the authority of this sub-title, the commissioner of health is hereby authorized to direct said tests to be made by the laboratories of either the United States Bureau of Standards, the Johns Hopkins University, the American Gas Association, or any other laboratory or testing agency approved by the commissioner of health; and the commissioner of health is hereby further authorized and directed to require the applicant to pay the costs of such tests." And it is on the provisions of this section that the appellant bases its contention that the commissioner of health cannot delegate his authority for inspections to such agencies, and particularly to the nonresident agency, the American Gas Association, that it is denied the equal protection of its rights under the Federal Constitution, and that the fees demanded by the American Gas Association are excessive and unfair, and to be compelled to pay such fees would be an arbitrary exercise of power on the part of the commissioner of health.

The appellant does not contend that inspection and registration of gas appliances and the licensing of dealers therein is not a proper exercise of the police power of the State. The Baltimore City Charter of 1927, compiled under the Acts of 1927, chapter 683, provides that the city shall have full power and authority "to preserve the health of the city" (p. 15); "to establish and regulate inspections" (p. 18); "to license, tax and regulate all businesses," etc. (p. 22); "to have and exercise within the limits of the City of Baltimore all the power commonly known as the police power, to the same extent as the State has or could exercise said power within said limits" (p. 26); and in addition to the powers enumerated in the charter it shall have the power "to pass all ordinances not inconsistent with the provisions of this charter or the laws of the State as may be proper in executing any of the powers, express or implied, enumerated in this charter, as well as such ordinances as it may deem expedient in maintaining the peace, good government, health and welfare of the City of Baltimore" (p. 52).

Gas appliances are purely mechanical and may not be in their nature, when well constructed and properly installed, dangerous. But when we consider that they are the agencies or instruments through which gas, manufactured and natural, is made available to the user, and that raw gas may cause asphyxiation and explosions, and that imperfect or incomplete combustion with insufficient ventilation may result in deadly carbon monoxide poisoning, and that gas is of such general use for domestic purposes, there can be no other conclusion than that the ordinances complained of are designed to "safeguard and protect the health and safety of the people of Baltimore" (section 11 of Ordinance 361, City Code, 566). By this section the commissioner of health is authorized to adopt and promulgate rules, regulations, and specifications for the sale, installation, and use in Baltimore of gas tubing, appliances, etc. "by or for the combustion of manufactured (illuminating) gas" in pursuance of but not in conflict with the health ordinances of the city. "The commissioner of health, in making and adopting said rules, regulations and specifications, may consider the rules, regulations and specifications established, by the American Gas Association" (a national organization) "one of the functions of which is to reduce the hazard from the use of manufactured or natural (illuminating) gas or any other rules, etc. relating to said subject, and the commissioner of health may accept the certificate of any laboratory or testing agency approved by him in determining whether any tubing, appliances, etc. required by him to be tested does in fact meet the tests so prescribed."

The appellant filed as an exhibit with the bill the rules, regulations and specifications of the American Gas Association and those adopted by the commissioner of health, from which it appears that those of the former were, with certain omissions, promulgated by the commissioner under the authority of the ordinances attacked by the appellant. The appellant has not alleged or even suggested that the specifications so adopted do not constitute correct standards for the construction and tests of gas appliances, and we will, therefore, assume for the purposes of this case that they should be

observed by those undertaking to market gas appliances in Baltimore.

With regard to inspection, the rule as stated in *Dillon's Municipal Corporations* (5th Ed.), sec. 709, is: "Laws requiring articles to be inspected or weighed and measured before being sold are in the nature of police regulations, and are valid in the absence of special constitutional provisions. When reasonable in their nature they are not regarded as being in restraint of trade." 32 *C. J.* 930; 2 *Cooley's Constitutional Limitations* (8th Ed.), 1272; *Turner v. State*, 55 Md. 240; *Id.* 107 U. S. 38, 27 L. Ed. 370; *Vansant v. Harlem Stage Co.*, 59 Md. 330. It is well settled that when inspection of merchandise is required before a license or permit to do business is granted the applicant or dealer, the cost of such inspection may be exacted. *Turner v. State, supra;* 37 *C. J.* 190.

In *Chicago, W. & V. Coal Co. v. People*, 181 Ill. 270, wherein the appellant disputed the right of the state to collect inspection fees required to be paid by the mine owner under act entitled "An act providing for the health of persons employed in coal mines" it was held that such a provision was not an improper exercise of the police power, and that the fees were imposed on the principle that they were compensation for services rendered and "presumably beneficial to the persons upon whom the fees are imposed under and by virtue of the general police power of the State." *Morgan's Steamship Co. v. Louisiana*, 118 U. S. 455, 30 L. Ed. 237; *City of Charleston v. Rogers*, 2 McCord L. Rep. (S. C.) 495; 2 *Cooley's Const. Lim.* (8th Ed), 1337; 32 *C. J.* 935; note to Ann. Cas. 1917A 167. Under the guise of a license fee a municipality cannot pass or enforce a revenue producing ordinance; the charge, collected under whatever name, "is the bill of costs attendant upon the expense, trouble and labor of licensing and supervising." *Vansant v. Harlem Stage Co.*, 59 Md. 330, 335; *Commissioners v. Covey*, 74 Md. 262, 268; *Harrison v. Baltimore*, 1 Gill, 264, 279.

The principal contention of the appellant is that the requirement of tests to be made by the agencies named, or any similar organization or institution, is an unlawful delegation

of power and is, therefore void. In *Baltimore v. Radecke,* 49 Md. 217, 228, this court, in the opinion by Judge Miller, citing *Harrison v. Baltimore, supra,* said: "It has been well said in reference to such general grants of power that as to the degree of necessity for municipal legislation on the subjects thus committed to their charge, the Mayor and City Council are the exclusive judges, while the selection of the means and manner (contributory to the end) of exercising the powers which they may deem requisite to the accomplishment of the objects of which they are made the guardians, is committed to their sound discretion."

The appellant filed as exhibits to the bill letters from the Bureau of Standards and the engineering department of Johns Hopkins University, the former to the effect that it did not make such tests as the ordinances required, the latter that it had only made such tests for the accomodation of its friends or its own information, though it did not decline to entertain a proposition to do such work, but in fact invited the appellant to confer and expressed its willingness to do what it could in the matter. With this the appellant seems to have eliminated as unavailable all except the American Gas Association with a laboratory equipped at Cleveland, Ohio, for the purpose of making tests such as are contemplated by the ordinances in question. The appellant's objections are, the cost and the fact that it is a non-resident, unofficial agency. The amended bill alleges that the cost for testing and certifying its products would be $10,000, but this was reduced, by a further statement amending one paragraph of the amended bill, to $1,800 for twenty types of gas ranges and six types of gas space heaters, and to this its chief objection is that, not being a member of the American Gas Association, it is asked to pay fifty per cent. more for the service requested than a member is required to pay. A schedule of the association filed with the bill explains the difference by saying members are charged less because "member manufacturing companies have contributed to the laboratory also through their dues," so that the difference is more apparent than real. This, the appellant says, constitutes its

denial of the equal protection of the laws. There is no suggestion that a charge of $1,200, which members of the association would be required to pay for the same service, would be unfair or exorbitant. The facilities and equipment have been provided by the association, presumably from the membership, and the fifty per cent. additional fees demanded of non-members is imposed for the purpose of equalizing the cost of tests between them and the membership of the association, and not for the purpose of discriminating against non-members. It does not, therefore, appear to us that there is such discrimination against the appellant as to deprive it of the equal protection of the laws guaranteed by the Federal Constitution.

Do the ordinances unlawfully delegate authority to unofficial agencies? The appellant contends that it gives the power of decision to the testing agency, while the appellees contend that the ordinances by their terms leave the decision of registration and license to the commissioner of health. Section 11 says: "the commissioner of health may accept the certificate of any laboratory or testing agency approved by him," and by section 11½, whenever he shall determine "that before passing upon any application for registration it is necessary and/or desirable to test in a laboratory or testing agency any tubing, appliance etc. offered for registration in order to determine whether or not the same complies with the specifications prescribed by him under the authority" of the ordinances, the commissioner of health is authorized to direct tests by the laboratories of any of the agencies named or any other laboratory or testing agency named by him, the costs of such tests to be paid in advance by the applicant. The testing agency does not decide anything; it ascertains as a fact whether the sample appliance or device is within the specifications prescribed by the commissioner of health. It is a matter of "measurement and arithmetical calculation" (*Baltimore v. Hopkins,* 56 Md. 1, 37; *Baltimore v. Gahan,* 104 Md. 145, 151), which some one with the requisite facilities must of necessity do. The appellant suggests that all it can be required to do is to submit its samples or models to

the commissioner of health, and that it then becomes the duty of the commissioner to provide the equipment and make the tests or have them made by other officials or employees of the city acting under his authority and control. The bill admits that the city does not have the facilities for making such tests.

The nature of the business is such that the city would not be justified in erecting a laboratory for the purpose of making such tests. There is a limit to the number of appliances and devices to be tested. Once a type is approved it would be marketed, and so far as that article of merchandise is concerned there would be no further use for a laboratory. It appears to be cheaper for the applicants, and better business practice, to have the tests made by some reliable agency, and this is evidently what the commissioner of health has decided. It may be expensive to those who sell gas wares and merchandise to the people of Baltimore, but it is an expense which will be added to the cost of doing business and will be passed on to the customer for whose benefit the legislation is in the end designed.

The principle involved in this case is not new in this and other states, where unofficial and nonresident agencies have not only prescribed but passed on the qualifications of physicians, dentists, and members of other professions and trades, and the authority of such agencies has been upheld as the proper exercise of the police power of the state. *Scholle v. State,* 90 Md. 729; *State v. Knowles,* 90 Md. 646; *People v. Witte,* 315 Ill. 282; *People v. Hawkinson,* 324 Ill. 285; *Dent v. West Virginia,* 129 U. S. 114; *Ex parte Gerino,* 143 Cal. 412; *Jones v. Board of Medical Examiners,* 111 Kan. 813.

A leading case on the subject of the delegation of power to an outside, unofficial agency is *St. Louis, Iron Mt. and Southern Ry. Co. v. Taylor,* 210 U. S. 281, 52 L. Ed. 1061. Under the "Safety Appliance Act, the American Railway Association was authorized "to designate to the Interstate Commerce Commission the standard height of drawbars for freight cars, * * * and shall fix a maximum variation from

such standard height to be allowed between the drawbars of empty and loaded cars," and the commission was directed to give notice to all common carriers of the standard so fixed. This was upheld as not being an unconstitutional delegation of legislative power. That case went much farther than the ordinances here complained of. Here the certificate of tests furnished by the agencies designated by the commissioner are for the information of the commissioner of health, while in the case cited, of the American Railway Association, the standard provided for was fixed by it and was binding upon the Interstate Commerce Commission and the railways of the country.

The appellant also complains that the ordinances attacked by it may be the instruments of oppression, and under their authority the commissioner of health may arbitrarily require tests to be made at such cost as to drive the appellant out of the Baltimore market. This is only a fear and apparently not well founded. The ordinances are designed, and their only purpose is, to protect the health and promote the safety of the people of Baltimore, and as such are within the range of the police power. So far as the cost of administration is concerned, the commissioner of health is obliged to treat all dealers and manufacturers alike, so that no one may be penalized to the advantage of another. If, in the exercise of his discretion, the commissioner acts "arbitrarily, or unreasonably, or exceed(s) the power conferred by the ordinance, those injured thereby can obtain relief from the courts." *Baltimore v. Bloecher & Schaaf,* 149 Md. 648, 654; *Tighe v. Osborne,* 150 Md. 452, 465. "It may be conceded that some of these provisions, if harshly administered, may be or become oppressive, but it by no means follows that the law itself is therefore not a legitimate exercise of the police power. It is not to be assumed that the public functionary will act in an oppressive or unlawful manner. Discretion must be reposed somewhere. If an official should transcend the legitimate limits of the authority with which the statute clothes him, the injured party is not without redress." *State v. Hyman,* 98 Md. 596, 619.

254

The appellant cites many cases wherein ordinances have been stricken down because of a delegation of police power to private persons, in which the consent of property owners within a certain radius or area was required as a condition precedent to a permit or license to engage in business or erect a building. In our view of this case these authorities are not in point, as we do not find a delegation of power in the ordinances complained of to any one but the commissioner of health.

Being of the opinion that the ordinances mentioned in the bill of complaint were passed in the exercise of the charter power of the Mayor and City Council of Baltimore, and are valid, the order of the chancellor will be affirmed.

*Order affirmed, with costs to the appellees.*