JACOB PETRUSHANSKY *v.* STATE OF MARYLAND

[No. 28, April Term, 1943.]

*Decided June 24, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, MELVIN, and ADAMS, JJ.

*Jacob Kartman*, with whom were *William Taft Feldman* and *Makover & Kartman* on the brief, for the appellant.

166

*Robert E. Clapp, Jr., Assistant Attorney General,* and *Thomas N. Biddison, Assistant State's Attorney for Baltimore City,* with whom were *William C. Walsh, Attorney General* and *J. Bernard Wells, States Attorney for Baltimore City,* on the brief, for the appellee.

SLOAN, C. J., delivered the opinion of the Court.

This case comes here on a ruling overruling a demurrer to an indictment which had charged the defendant (appellant) with the violation of a health ordinance of the City of Baltimore. At the trial, he was found guilty, and from the judgment, appealed. Four exceptions were taken to rulings on the evidence, but they were abandoned and the question on demurrer only submitted for decision. The grounds of demurrer as set out in the defendant's brief are:

"I. The ordinance is too vague and indefinite to be a valid criminal enactment.

"II. The ordinance is unreasonable and oppressive and beyond the charter powers of the City of Baltimore.

"A. The Ordinance imposes a liability upon owners of property out of possession in conflict with their rights and duties under the laws of Maryland.

"B. The Ordinance imposed unreasonable burdens upon fiduciaries or agents.

"III. The Ordinance unlawfully delegates to the Commissioner of Health an arbitrary discretion whether or not to enforce it.

"IV. No definite standards are defined in the Ordinance for the guidance of the Commissioner of Health as to the conditions under which he is to act.

"V. The Ordinance grants the Commissioner of Health arbitrary discretion as to the corrective action to be taken.

"VI. No adequate notice is provided by the Ordinance.

"VII. No review of an order of the Commissioner is permitted to test its validity or propriety.

"VIII. The title of the Ordinance is misleading and it is therefore invalid."

The indictment under which the defendant was convicted, charges "that Jacob Petrushansky, late of said city on the first day of February in the year of our Lord nineteen hundred and forty-three, at the City aforesaid, in violation of Article Sixteen of the Baltimore City Code of the year of our Lord nineteen hundred and twenty-seven, as amended by Ordinance number Three hundred and eighty-four of the Mayor and City Council of Baltimore, passed and approved on the sixth day of March, in the year of our Lord nineteen hundred and forty-one, being then and there the owner of a certain lot, ground, cellar, premises and possession in said City fronting on Salem Street, to wit, number Twenty-five hundred and one Salem Street, in said City, and the Commissioner of Health of said City, before the institution of this prosecution, and after inspection of said premises, to wit, on the eighteenth day of December, in the year of our Lord nineteen hundred and forty-two, being of the opinion that said lot, ground, cellar, premises and possession, was in a state of nuisance and unfit for human habitation, that the said premises contained a toilet for which inadequate drainage was provided, that the said premises contained an accumulation of rubbish and filth and that the premises and property aforesaid was in such state of disrepair as to endanger the health of the citizens of said City, he, the said Commissioner of Health of said City, on the eighteenth day of December, in the year of our Lord nineteen hundred and forty-two notified the said Jacob Petrushansky, owner as aforesaid of said lot, ground, cellar, premises and possession, to have the said nuisance and cause of said nuisance, and particularly the conditions aforesaid existing removed and abated by repairing and correcting the same within three days after the date of the service of said notice, and the said notice having been served on the said Jacob Petrushansky more than ten days prior to the institu-

tion of this prosecution, to wit, on the eighteenth day of December, in the year of our Lord nineteen hundred and forty-two, and the said Jacob Petrushansky more than ten days after the service on him, as aforesaid, of said notice, unlawfully did refuse and neglect to comply with the terms of said notice and unlawfully did refuse and neglect to abate said nuisance and cause of nuisance, he, the said Jacob Petrushansky, during all the time aforesaid, being the owner of said lot, ground, cellar, premises and possession, and said lot, ground, cellar, premises and possession being after the date of service of said notice, and during all the time aforesaid, and at the time of the finding of this indictment, in a state of nuisance, against the form of the ordinance in such case made and provided, and against the peace, government and dignity of the State."

The ordinance, No. 384, approved March 6, 1941, under which the defendant was indicted, tried, and convicted, is as follows:

"An ordinance to add eight (8) new sections to Article 16 of the Baltimore City. Code of 1927, title 'Health,' and new sections requiring that dwellings be kept clean and free from dirt, filth, rubbish, garbage and similar matter, and from vermin and rodent infestation and in good repair, fit for human habitation, and authorizing the Commissioner of Health of Baltimore City to issue orders compelling the compliance with said provisions, or to correct the condition, at the expense of the property owner, and charge the property with a lien to the extent of the necessary expenses.

"SECTION 1. *Be it ordained by the Mayor and City Council of Baltimore,* That eight (8) new sections be added to Article 16 of the Baltimore City Code of 1927, title 'Health,' sub-title 'Nuisances and Prevention of Diseases,' said new sections to be under the sub-heading 'Dwellings,' to follow Section 156, and to read as follows:

"156A. Every dwelling and every part thereof shall be kept clean and free from any accumulation of dirt,

filth, rubbish, garbage or similar matter, and shall be kept free from vermin or rodent infestation. All yards, lawns and courts shall be similarly kept clean and free from rodent infestation. It shall be the duty of each occupant of a dwelling unit to keep in a clean condition that portion of the property which he occupies or over which he has exclusive control. If the occupant shall fail to keep his portion of the property clean the Commissioner of Health may send a written notice to the occupant to abate such nuisance within the time specified in said notice. Failure of the occupant to comply with such notice shall be deemed a violation of this ordinance and upon conviction the occupant shall be subject to the penalty or penalties herein provided.

"It shall be unlawful for any person willfully or maliciously to deposit any material in any toilet, bath tub, sink or other plumbing fixture which may result in the obstruction of any sanitary sewer. This liability on the part of the occupant shall not relieve the owner of the responsibility of cleaning any resultant chokage but shall subject the occupant to the penalties of this ordinance upon proper proof of such willful or malicious act.

"156B. Every dwelling and every part thereof shall be maintained in good repair by the owner or agent, and fit for human habitation. The roof shall be maintained so as not to leak, and all rain water shall be drained and conveyed therefrom so as not to cause dampness in the walls or ceilings.

"156C. Whenever any dwelling, or any building, structure, excavation, business pursuit, matter, condition or thing in or about a dwelling or the lot on which it is situated, or the plumbing, sewerage, drainage, light or ventilation thereof, is found by the Commissioner of Health to be dangerous or detrimental to life or health, the Commissioner of Health may order that the matter, condition or thing be removed, abated, suspended, altered or otherwise improved, as his order shall specify. If any such order of the Commissioner of Health, issued

under the authority of the provisions of this Section, is not complied with within ten days after the service thereof, or within such shorter time as he may designate as being necessary under the circumstances, then such order may be executed by said Commissioner of Health through his officers, agents, employees or contractors, and the expense incurred incident to said order shall be paid by the owner of said property and until so paid shall be a lien upon the realty and recoverable as other liens on realty in Baltimore City, or he may order the premises vacated.

"156D. Before proceeding to execute such order, the Commissioner of Health shall post a notice on the front of the building, stating that since such order was not complied with within the time mentioned in said notice, the Commissioner of Health will proceed to execute the same at the expiration of an additional five days and charge the cost thereof to the owner of the premises. A copy of such notice shall be sent to the owner of the property, or his agent, if names and addresses, on diligent search, can be ascertained, and such notice shall be posted on said premises at least five days before the Commissioner of Health proceeds to incur expenses, unless the condition is of such a character requiring immediate action, in which case the time of the notice shall be such as, in the judgment of the Commissioner of Health, is reasonable and proper. The Commissioner of Health shall deliver a copy of said expenses to the Bureau of Liens, and the clerk in charge of said bureau shall record or file, the same in a book or file open to public inspection.

"156E. Whenever it shall be found by the Commissioner of Health that a dwelling is unfit for human habitation, or dangerous to life or health by reason of want of repair, of defects in the drainage, plumbing, lighting, ventilation or the construction of the same, or by reason of the existence on the premises of any condition likely to cause sickness or injury among the occupants

of said dwelling, or for any other causes affecting the public health, the Commissioner of Health may issue an order requiring such dwelling to be vacated. A copy of such order shall be posted on the front of the dwelling at least ten days before it shall be effective, unless the situation is of a character requiring immediate action, in which case the effective time of the order shall be such as in the judgment of the Commissioner of Health is reasonable and proper. A copy of such order shall be sent to the owner of the property, or his agent, if names and addresses, on diligent search, can be ascertained. The dwelling so ordered to be vacated shall not again be occupied until a written statement shall have been secured from the Commissioner of Health showing that the dwelling or its occupation has been made to comply with this or any other existing law.

"156F. Whenever any person or persons shall be in actual possession of or have charge, care or control of any property within the city, as executor, administrator, trustee, guardian or agent, such person shall be deemed and taken to be the owner or owners of such property within the true intent and meaning of this ordinance, and shall be bound to comply with the provisions of this ordinance to the same extent as the owner, and notice to any such person of any order or decision of the Commissioner of Health shall be deemed and taken to be a good and sufficient notice as if such person or persons were actually the owner or owners of such property.

"156G. The Commissioner of Health is hereby authorized and empowered to make and adopt such rules and regulations as he may deem proper and necessary for the enforcement of this ordinance for the better protection of the health of the city.

"156H. Any persons violating any of the provisions of this ordinance, or any lawful order or regulation made and adopted by the Commissioner of Health in pursuance thereof, shall be guilty of a misdemeanor and shall be subject to a fine not exceeding $50.00 and each day's violation shall constitute a separate offense."

The authority of the Mayor and City Council to pass and enforce ordinances to promote and protect the health of the city is Section 6, Subsection (9), of the City Charter, Local Code, Article 4, Section 6, the applicable parts of which are the power, "To preserve the health of the city. To prevent and remove nuisances. * * * To regulate the construction, care, use and management of tenement houses, lodging houses and cellars in the City of Baltimore, for the better protection of the lives and health of the inmates dwelling there."

In pursuance of this charter power, the city passed Ordinance No. 384, which added eight sections (A to H) to Section 156 of Article 16 of the City Code of 1927, which have been heretofore quoted. The defendant's criticism of the indictment is that he is indicted as the owner and possessor of the premises No. 2501 Salem Street, and that it is not a tenement or lodging house of which he had the "care, use and management." If this clause is the only one which has any application to this case, the defendant is right. But it will be noted that the first two clauses give the city the power to adopt ordinances "To preserve the health of the city," and "To prevent and remove nuisances," and we must decide whether the provisions of Ordinance No. 384 are proper and reasonable regulations for the abatement of nuisances on private property, whether the same be occupied by the landlord or a tenant.

The defendant has abandoned all of the exceptions except the ruling on demurred, so that we cannot discuss the facts in evidence.

The first objection of the defendant is that the ordinance is "too vague and indefinite to be a valid criminal enactment." Is it? It is clear that it is intended to compel the occupants to maintain clean, not filthy premises. We hear much about slum clearance, but we do not hear it where property is occupied by persons who are personally cleanly and are good housekeepers. If the occupants were the only people concerned, the

nuisances they create would not be public, and the neighbors and the city might not be affected. But filthy and unsanitary premises, especially when existing in large numbers, can easily create a situation that may be a menace to the public health. The city has the power under its charter "To preserve the health of the city," and "To prevent and remove nuisances." The exercise of charter powers in a city is not discretionary, but is a duty. *Baltimore v. Marriott*, 9 Md. 160, 66 Am. Dec. 326; *Taylor v. Cumberland*, 64 Md. 68, 20 A. 1027; *Cochrane v. Frostburg*, 81 Md. 54, 31 A. 703.

In our opinion, there is nothing vague or indefinite in the description or designation of nuisances covered by the ordinance or by the indictment which charges the defendant with being the owner and possessor of the premises, which the Health Department on inspection found to be in "a state of nuisance and unfit for human habitation" and "contained a toilet for which inadequate drainage was provided" and "contained an accumulation of rubbish and filth" and "was in such a state of disrepair as to endanger the health of the citizens of said city." There were numerous other nuisances specified in the ordinance, but a defendant does not have to be guilty of all of them to be guilty of any one. The defendant was given notice to abate the nuisances within three days, and for his faiulre to do so, the prosecution was begun more than ten days after the service of the notice. We agree with the defendant that vagueness and indefiniteness of an ordinance would condemn it, but we do not agree that such defects are present here.

The second objection is that the ordinance is unreasonable and oppressive and beyond the charter powers of the city, because it imposes liability upon owners out of possession, and unreasonable burdens on fiduciaries or agents. If this is true, it would be a good defense. The one who is responsible is the one who creates or maintains the nuisance. "If a landlord demise premises which are not in themselves a nuisance, but may or may

not become such, according to the manner in which they are used by the tenant, the landlord will not be liable for a nuisance created on the premises by the tenant." *Maenner v. Carroll*, 46 Md. 193, 216; *Marshall v. Price*, 162 Md. 687, 161 A. 172, note 33 A. L. R. 530. We do not have such a situation here where the owner is also charged with being in possession, and are not presented with the question of the validity of Section 156F. Manifestly that section could have no application to a landlord or lessor unless the nuisance complained of is structural. *Clark & Stevens v. Gerke*, 104 Md. 504, 65 A. 326.

The third objection to the ordinance is that "it unlawfully delegates to the Commissioner of Health an arbitrary discretion, whether or not to enforce it." This objection condemns itself; the Commissioner is presumed by law to do his duty; he has no choice as to offenders; he must treat all alike, or subject himself to the danger of indictment for non-feasance or misfeasance.

The complaints are also made (IV and V) that there are no definite standards under which the Commissioner should act, and that the ordinance grants him arbitrary power and discretion. The defendant has referred us to several cases from other States in which similar ordinances have been stricken down because no standards for the observance of the citizen have been prescribed. We fail to see how filth can be classified, graduated, or standardized except as filth. We have a standard, which we have thought, and still think, is the better test, and that is that the application shall be to all alike. The only purpose of the ordinance is to protect and preserve the health of the people of Baltimore, and the Commissioner of Health is obliged to treat all alike. *Portsmouth Stove & Range Co. v. Baltimore*, 156 Md. 244, 253; 144 A. 357. If the Commissioner acts arbitrarily, unreasonably, or exceeds his power, those injured thereby may obtain relief from the courts. *Baltimore v. Bloecher & Schaaf*, 149 Md. 648, 654, 132 A. 160; *Tighe v. Osborne*, 150 Md. 452, 465, 133 A. 465.

The charter, Art. 1, Sec. 91, P. L. L. (1930), Sec. 71, provides for the appointment of the Commissioner of Health, whose duty it shall be to cause all ordinances for the preservation of health "to be faithfully executed and strictly observed"; and "he shall be a physician of five years' experience and active practice at the time of his appointment." The charter tried, at least, to provide for a capable and impartial commissioner. To the criticism of the defendant that the commissioner has unbridled power, the answer is *State v. Hyman*, 98 Md. 596, 619, 57 A. 6, 10, where it was said: "It may be conceded that some of these provisions, if harshly administered, may be or become oppressive, but it by no means follows that the law itself is therefore not a legitimate exercise of the police power. It is not to be assumed that the public functionary will act in an oppressive or unlawful manner. Discretion must be reposed somewhere. If an official should transcend the limits of the authority with which the statute clothes him, the injured party is not without redress." *Portsmouth Stove & Range Co. v. Baltimore, supra.*

With regard to the sixth objection, that no adequate notice is provided, we can only say that one person's guess is as good as another's, but we can say that in the enforcement of a health regulation, no time should be wasted.

Another objection (VII) is that no provision for a review of an order "is permitted to test its validity or propriety." "Its validity" is for the courts, which are always open to the injured and oppressed, *supra;* its propriety, which is in the judgment of the Commissioner of Health, can be reviewed by a jury if there is an indictment. There is nothing in the ordinance which denies a citizen his day in court.

The eighth and last objection of the defendant is that the title is misleading. The ordinance, including the title, has been quoted in full. Amongst the reasons assigned is that the penalty for failure to obey the notice of the

Commissioner is not there stated. In *Baltimore v. Wallman*, 123 Md. 310, it was said: "It is well settled by the numerous cases dealing with this subject, that it is only the subject matter of the Act that need be described in the title, and the title need not indicate or disclose the details, agency or means by which the subject of the Act is to be carried into effect" and cases there cited.

The defendant does make the point that there is no authority in the charter for the imposition of a lien to reimburse the city for the cost of abatement of a nuisance, but that contention is not before us, as no lien appears to have been here asserted, and the fine imposed is a penalty and not a lien.

This indictment recites the number of the ordinance alleged to have been violated, and concludes as required by Sec. 664, Art. 27 of the Code (1939). Nevertheless, in our opinion it charges a good common law indictment, even if we held the ordinance defective, which we do not so hold. The judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*